# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD W. THOMPSON, | : |
|           **Plaintiff,** | :    CIVIL ACTION |
| v. | : |
| | :    NO. 17-902 |
| EQUIFAX INFORMATION SERVICES, LLC <u>et al.</u> | : |
|           **Defendants.** | : |

Goldberg, J.                                                                                                      March 19, 2018

## MEMORANDUM OPINION

Plaintiff Edward Thompson brings the current action against Defendants Equifax Information Services, LLC ("Equifax") and Experian Information Solutions, Inc. ("Experian")[1] under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*. Defendant Equifax has moved to dismiss the case for lack of venue or, alternatively, to transfer the case to the Northern District of Georgia. For the reasons set forth below, I will transfer the case the Northern District of Georgia.

## I.    FACTS AS ALLEGED IN THE COMPLAINT

The Complaint alleges the following facts:

Defendants Equifax and Experian, along with former Defendant Trans Union, (collectively, the "CRAs") are regulated under the FCRA as "consumer reporting agencies" and must follow procedures to ensure that the reports they sell meet the standard of "maximum

---

[1] Plaintiff originally named Trans Union, LLC ("Trans Union") as a Defendant, but settled his claims with Trans Union and stipulated to its dismissal on June 6, 2017. Plaintiff's response in opposition to the Motion to Transfer Venue also represents that Plaintiff has settled his claims with Experian. (Pl.'s Opp'n Mot. to Transfer, ECF No. 28, at p. 1 n.1.) To date, however, I have not received any request for dismissal of Experian and, as such, Experian remains a party to this litigation.

possible accuracy." When the CRAs are advised by any of their many data furnishing sources that a given consumer is deceased, they place a "deceased" notation or marking on reports. The furnishing sources identify "deceased" consumers by marking the "status" of such consumer's responsibility for any subject account with an "X" code in the ECOA field of an electronic data input format used in the credit reporting history, known as Metro or Metro 2. The CRAs do not independently verify with any source that a consumer is, in fact, deceased before placing a "deceased" mark on that consumer's report. Even in instances where other data on the face of the consumer's report indicates that he/she is not deceased, the CRAs have no procedures to assure that a consumer with a "deceased" mark is, in fact, deceased. (Compl. ¶¶ 8, 10, 12–16, 22–23.)

Once a "deceased" mark is placed on a consumer's report, the CRAs will not calculate and will not provide a credit score for that consumer. Nevertheless, the CRAs routinely sell credit reports to third parties for persons with a "deceased" mark on their reports and with no credit score. The CRAs know that consumers without credit scores or with "deceased" marks on their reports are turned down for credit. For years after a consumer's actual death, CRAs will continue to sell credit reports about that consumer and, therefore, profit from the sale of reports on the deceased. (Id. ¶¶ 24–25, 29–32, 38, 41.)

Plaintiff alleges that, although he is not deceased, he has been marked as "deceased" on his Trans Union, Experian, and Equifax credit reports since at least January 2016. As a result, the CRAs have not calculated a credit score for Plaintiff, even though they sold reports about him to third parties, and have repeatedly published and disseminated inaccurate consumer reports to third parties. In turn, Plaintiff has been unable to obtain any credit. (Id. ¶¶ 51–54.)

Plaintiff initiated action against the CRAs on February 28, 2017. On October 13, 2017, Equifax filed a Motion to Dismiss for Improper Venue, or Alternatively, to Transfer Venue to the Northern District of Georgia. Plaintiff filed a response on November 10, 2017, and Equifax

submitted a reply brief on December 8, 2017. Experian has neither joined nor opposed the Motion.

## II. MOTION TO DISMISS FOR IMPROPER VENUE UNDER F.R.C.P. 12(b)(3)

### A. Standard of Review

Under 12(b)(3), a court must grant a motion to dismiss if venue is improper. Fed. R. Civ. P. 12(b)(3). When a plaintiff files a suit in an improper forum, "district courts are required either to dismiss or transfer to a proper forum." Lafferty v. St. Riel, 495 F.3d 72, 77 (3d Cir. 2007) (citing Goldlawr, Inc. v. Heiman, 369 U.S. 463, 465–66); 28 U.S.C. § 1406(a). Motions to dismiss for improper venue "generally require the court to accept as true the allegations of the pleadings." Heft v. AAI Corp., 355 F. Supp. 2d 757, 762 (M.D. Pa. 2005) (citing Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002)). "The parties may submit affidavits in support of their positions, and may stipulate as to certain facts, but the plaintiff is entitled to rely on the allegations of the complaint absent evidentiary challenge." Heft, 335 F. Supp. 2d at 762 (citing Carteret Sav. Bank, F.A. v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992); Myers v. Am. Dental Ass'n, 695 F.2d 716, 724 (3d Cir. 1982)). "Dismissal is considered to be a harsh remedy . . . and transfer of venue to another district court in which the action could originally have been brought, is the preferred remedy." Spiniello Cos. v. Moynier, No. 13-5145, 2014 WL 7205349, at *5 (D.N.J. Dec. 17, 2014) (quoting NCR Credit Corp. v. Ye Seekers Horizon, Inc., 17 F. Supp. 2d 317, 319 (D.N.J. 1998)).

### B. Discussion

"The test for determining venue is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim . . . .'" Cottman Transmission Sys., Inc. v. Martino, 36 F.3d 291, 294 (3d Cir. 1994). According to 28 U.S.C. 1391(a), venue is proper only in:

3

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Venue is proper under 28 U.S.C. § 1391(a) if all defendants are residents of the State in which the district is located. Pursuant to 28 U.S.C. § 1391(c)(2), an entity shall be deemed to reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." Id.

The Complaint alleges that both Experian and Equifax regularly conduct business in the Eastern District of Pennsylvania. (Compl. ¶¶ 6–7.) Equifax does not contest that it is subject to the Court's personal jurisdiction. Given these alleged facts, I find that Plaintiff has properly alleged that both Equifax and Experian "reside" in Pennsylvania for purposes of venue under § 1391(a).[2]

## III. MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(b)

### A. Standard of Review

Under 28 U.S.C. § 1404(a), a district court may transfer an action to any other district "where it might have been brought" if this transfer is "for the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a); see also In re Genentech, Inc., 566 F.3d 1338, 1341–42 (Fed. Cir. 2009). The determination of whether to transfer venue

---

[2] Equifax's Motion to Dismiss focuses solely on 28 U.S.C. § 1392(b). As venue is proper under subsection (a), I need not consider this argument.

4

pursuant to § 1404(a) is governed by federal law. See Jumara v. State Farm Ins. Co., 55 F.3d 873, 877-878 (3d Cir. 1995).

Analysis of a request for a § 1404(a) transfer has two components. First, both the original venue and the requested venue must be proper. Jumara, 55 F.3d at 879. As noted above, venue is proper in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred; or (3) a judicial district in which a substantial part of the property that is the subject of the action is situated. 28 U.S.C. § 1391. A business entity resides "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." Id. § 1391(c)(2); see also Johnson v. Equifax Info. Servs., LLC, No. 17-066, 2017 WL 2779568, at *2 (E.D. Pa. June 27, 2017).

Second, the purpose of allowing § 1404(a) transfers is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Mosaid Techs., Inc. v. Sony Ericsson Mobile Commc'ns (USA), Inc., 885 F. Supp. 2d 720, 723 (D. Del. 2012) (quoting Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (further quotations omitted)). Accordingly, the court must undertake a balancing test comprised of various public and private interest factors. Jumara, 55 F.3d at 879. Analyses of transfers under § 1404(a) are "flexible and must be made on the unique facts of each case." Job Haines Home for the Aged v. Young, 936 F. Supp. 223, 227 (D.N.J. 1996) (internal quotations omitted). The court's discretion is broad in deciding whether to transfer. Synthes, Inc. v. Knapp, 978 F. Supp. 2d 450, 458–59 (E.D. Pa. 2013).

**B.     Discussion**

Equifax moves to transfer this case, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the Northern District of Georgia. I find transfer to be warranted.

1. Whether Venue is Proper in the Northern District of Georgia

As an initial matter, venue is proper in the proposed transferee district. "Multiple courts considering § 1404 transfer motions in FCRA cases have noted that the situs of the material events . . . is generally the place where the defendant credit reporting agency conducted its business." Smith v. Hireright Solutions, Inc., No. 09–6007, 2010 WL 2270541, at *4 (E.D. Pa. June 7, 2010) (collecting cases).

According to the affidavit of Equifax's Operations Strategist, Alicia Fluellen,[3] Equifax's consumer reporting database is located and maintained in Atlanta, Georgia, which is where creditors and other data furnishers send in consumer information, where the information is processed and added to Equifax's consumer database, and from where credit reports are issued. (Decl. of Alicia Fluellen ("Fluellen Decl.") ¶¶ 10–12.) Because the relevant actions by Equifax with respect to this lawsuit occurred in Georgia, venue is proper in that forum.

2. The *Jumara* Factors

Having determined that venue is proper in Georgia, I must now analyze whether the balance of conveniences weighs in favor of transfer. Under Jumara, the private interest factors include: (1) the plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses; and (6) the location of books and records. Id. at 879. The public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy,

---

[3] In deciding a § 1404(a) transfer motion, a court may consider evidence external to the complaint. "Appropriate supporting evidence includes documents, affidavits, or statements concerning the availability of material witnesses, relative ease of access to evidence, and business or personal hardships that might result for the moving parties." Fellner v. Phila. Toboggan Casters, Inc., No. 05-2052, 2005 WL 2660351, at *4 (E.D. Pa. Oct. 18, 2005).

expeditious, or inexpensive; (3) considerations of administrative difficulty resulting from court congestion; (4) the local interest in deciding controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. Id.

### a. Plaintiff's Forum Preference

The analysis begins with an examination of Plaintiff's choice of venue, as manifested by where the suit was originally brought. As a general rule, a plaintiff's choice of venue is of paramount consideration and "should not be disturbed lightly." In re Amkor Tech., Inc. v. Sec. Litig., No. 06-298, 2006 WL 3857488, at *3 (E.D. Pa. Dec. 28, 2006) (quoting Weber v. Basic Comfort, Inc., 155 F. Supp. 2d 283, 285 (E.D. Pa. 2001)). Nonetheless, a plaintiff's choice of forum is given less weight where plaintiff chooses a forum that is not his home forum and fails to make a "strong showing of convenience" in his original choice. Gore v. Stryker Corp., No. 09-2987, 2010 WL 3069653, at *3 (E.D. Pa. Aug. 4, 2010).

Here, the Complaint alleges that Plaintiff is a resident of Texas. (Compl. ¶ 4.) In his response brief, however, he alleges that he actually lives in Carp Lake, Michigan. (Pl.'s Opp'n Mot. to Transfer, p. 2.) In either event, Plaintiff does not reside in Pennsylvania.

Moreover, Plaintiff makes no viable argument as to why Pennsylvania is a convenient forum. He asserts that Michigan is only 855 miles from Philadelphia as opposed to 982 miles from Atlanta, Georgia. He further contends generally that "[s]uch a transfer would only cause further inconvenience for Plaintiff and his potential witnesses in this case." (Pl.'s Opp'n Mot. to Transfer 7.) Neither of these arguments rise to the level of a "strong showing" of convenience required. Accordingly, I decline to give this factor any weight.

### b. Defendant's Forum Preference

The second factor—defendant's forum choice—is "entitled to considerably less weight than Plaintiff's, as the purpose of a venue transfer is not to shift inconvenience from one party to

7

another." EVCO Tech. and Dev. Co. v. Precision Shooting Equip., Inc., 379 F. Supp. 2d 728, 730 (E.D. Pa. 2003) (citations omitted). Nevertheless, given that Equifax is a resident of Georgia, Defendant's preference for a Georgia forum weighs slightly in favor of transfer.

    c.  Whether the Claim Arose Elsewhere

As noted above, multiple courts considering § 1404 transfer motions in FCRA cases have found that the situs of the material events, and thus the appropriate venue, is generally the place where the defendant credit reporting agency conducted its business. See, e.g., Hireright Solutions, 2010 WL 2270541, at *4 (citing cases); Bogollagama v. Equifax Info. Servs., LLC, No. 09–1201, 2009 WL 4257910, at *3 (E.D. Pa. Nov. 30, 2009).

Here, it is undisputed that Equifax's consumer center and consumer reporting database are located in Georgia. (Fluellen Decl. ¶¶ 9–10.) Moreover, credit reports and other information are issued to inquiring companies from the database in Georgia, consumer reports are assembled in Georgia through an automated process that uses the consumer database as the sole source of consumer information, and all of the information in Equifax's credit file is stored and maintained in Georgia. (Id. ¶¶ 11–13.)

Plaintiff alleges no actions by Equifax that would place the situs of the material events within the Eastern District of Pennsylvania. Although Plaintiff asserts that he was denied credit by companies in Ohio and California, these are damage-related contacts and not where the claim arose. Because any alleged wrongdoing by Equifax would have occurred in Georgia, this factor weighs in favor of transfer.

    d.  Convenience of the Parties and Party Witnesses

With respect to the convenience of the parties and party witnesses factor, Georgia is clearly the more appropriate venue. As noted by Equifax, all Equifax employees who would testify regarding (a) the underlying factual allegations, (b) Plaintiff's credit reports, and

(c) Equifax's policies and procedures related to dispute resolution are located in Georgia. (Fluellen Decl. ¶ 22.) Equifax avers that none of its communications with Plaintiff took place in Pennsylvania, and it is aware of no documents or witnesses with knowledge of the allegations that are located within the Eastern District of Pennsylvania. (Id. ¶¶ 25–28.) Plaintiff's unsupported statement that he plans to call witnesses from outside of Georgia fails to establish that any witness will be more inconvenienced by having to travel to Georgia versus Pennsylvania. Therefore, I must weigh this factor in favor of transfer.

    e.  Convenience of Non-Party Witnesses

The convenience of non-party material witnesses "is a particularly significant factor in a court's decision whether to transfer." Idasetima v. Wabash Metal Prods., Inc., No. 01–97, 2001 WL 1526270, at *2 (E.D. Pa. Nov. 29, 2001). Here, Plaintiff alleges that he potentially will be calling witnesses located in Ohio to support his claim that he was denied credit by Comenity Bank, and from Michigan to provide evidence that improper "deceased" mark on the credit report related to his son. (Pl.'s Opp'n Mot. to Transfer 8.) Plaintiff, however, has not substantiated how travel from those states to Georgia is any less convenient than travel from those states to Pennsylvania. As this factor neither favors nor undermines transfer, I give it no weight.

    f.  Location of Books and Records

The final private factor is the location of books and records. Generally, this factor is given little weight "as technological advances 'have shortened the time it takes to transfer information, reduced the bulk or size of documents or things on which information is recorded . . . and have lowered the cost of moving that information from one place to another.'" Papbst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp., 126 F. Supp. 3d 430, 443 (D. Del. 2015) (quoting Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc., No. 01-199, 2001 WL 1617186, at *3 (D. Del. 2015)).

9

Equifax avers that all documents and data associated with this dispute are in Georgia. (Fluellen Decl. ¶ 23.) Although there is no indication that these documents could not be easily transferred to Pennsylvania, this factor still weighs slightly in favor of transfer.

### g. The Public Interests

Of the public interest factors, I find that they have no bearing on the transfer inquiry.

Plaintiff argues, however, that considerations of judicial economy weigh against transfer. He contends that this Court already has familiarity with this case, making it inefficient to transfer to a new district. He reasons that "[t]o transfer this matter at this stage of the case would mean that a judge in the Norther District of Georgia would have to learn the case from the beginning." (Pl.'s Opp'n Mot. to Transfer 8–9.)

I note, however, that other than a Rule 16 conference and a telephone conference before a magistrate judge, this Court has seen little activity on this case. Given the relative simplicity of the Complaint's facts, the transferee court should have little difficulty getting up to speed. Moreover, as all Equifax documents and witnesses are in Georgia, practical considerations will make a trial there easy, expeditious, and less expensive.

### C. Conclusion as to Transfer

Having considered the parties' briefing and exhibits, I find that Equifax has clearly demonstrated that this case could have been brought in the Northern District of Georgia and that the balance of conveniences favors transfer. Accordingly, I will grant Equifax's Motion to Transfer this matter to the United States District Court for the Northern District of Georgia.